FILED
CLERK
5/7/2013 3:56 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------- X
HICA EDUCATION LOAN CORPORATION,

                         Plaintiff,

      -against-

ERIC H. FEINTUCH a/k/a ERIC HAL
FEINTUCH,

                        Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
12-CV-5243 (ADS)

**APPEARANCES:**

**Frank Steven Tate, Esq.**
*Attorney for the Plaintiff*
550 Old Country Road
Suite 201
Hicksville, New York 11801

**Eric H. Feintuch**
*Defendant Pro Se*
636 Nutley Place
Valley Stream, New York 11581

**SPATT, District Judge.**

      On October 18, 2012, the Plaintiff HICA Education Loan Corporation ("the Plaintiff") commenced this action against the Defendant Eric H. Feintuch a/k/a Eric Hal Feintuch ("the Defendant"), seeking enforcement of an indebtedness arising under the United States Health Education Assistance Loan ("HEAL") Program (42 U.S.C. §§ 292/294 et seq. and the Federal Regulations set forth in 42 C.F.R. Part 60). In this regard, the Plaintiff alleges that the Defendant failed to make the payments that are due and owing under the terms of three promissory notes, which the Defendant signed in the 1980s pursuant to the provisions of the HEAL statutes and

1

regulations. The Plaintiff further asserts that despite its demand for payment, the Defendant has not repaid the sums that are due and owing under the notes in accordance with their terms.

On December 14, 2012, based on the Defendant's failure to timely answer or otherwise respond to the Complaint, the Plaintiff requested a Certificate of Default, which was subsequently entered by the Clerk of the Court on December 17, 2012. Presently before the Court is the Defendant's unopposed motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(c) to vacate the Certificate of Default in this action. For the reasons discussed below, the Defendant's motion is granted.

## I. BACKGROUND

### A. Factual Background

The Plaintiff, a corporation, is organized, chartered and existing under the laws of South Dakota. (Compl., ¶ 1.) Sallie Mae is the Plaintiff's duly appointed and acting servicing agent. (Compl., ¶ 1.) Of relevance to the present action, the Plaintiff is the transferee and/or assignee of the Student Loan Marketing Association ("SLMA"). The Defendant is a citizen of the state of New York and resides within the Eastern District of New York. (Compl., ¶ 2.)

In the 1980s, the Defendant signed three promissory notes pursuant to the provisions of the HEAL statutes and regulations. (Compl., ¶ 5.) Specifically, the Defendant signed (1) a promissory note for the amount of $10,417 on June 12, 1985; (2) a promissory note for the amount of $7,327 on July 5, 1984; and (3) a promissory note for the amount of $8,140 on February 6, 1986. (Compl., ¶ 5.) The payee for all three promissory notes was BayBank Norfolk County Trust Co. (Compl., ¶ 5.) "The sums described in the [n]otes were loaned and advanced to [the] Defendant." (Compl., ¶ 6.)

2

At some point not specified in the Complaint, the three notes at issue were sold, transferred and assigned to the Plaintiff by SLMA. (Compl., ¶ 7.) As such, the Plaintiff is now the owner and/or holder of the notes. (Compl., ¶ 7.) According to the Plaintiff, at some point again not specified in the Complaint, the "Defendant failed to make the payments that are due and owing under the terms of the [n]otes, and, despite demand for payment, [the] Defendant has not repaid the sums that are due and owing under the [n]otes in accordance with the terms of the [n]otes." (Compl. ¶ 8.) The Defendant, however, contends that in or around May 2012, at the direction of a Sallie Mae Representative, he called an automated phone system for Sallie Mae, "proceeded through the prompts and understood by the end of the call that he had obtained a forbearance on all student loans so that no payment would be necessary for at least several months." (Feintuch Decl., ¶¶ 19–24.)

## B. Procedural History

The Plaintiff commenced the instant action against the Defendant on October 18, 2012. Based on the Defendant's alleged default on the promissory notes, the Plaintiff seeks a judgment against the Defendant for actual damages, including (1) unpaid principal, (2) accrued, unpaid, prejudgment interest calculated in accordance with the terms of the notes and (3) accrued, unpaid late charges as applicable, with post-judgment interest on these amounts at the variable rate set forth in the notes. (Compl., "WHEREFORE" ¶.)

On November 6, 2012, the Defendant was properly served with the summons and Complaint. (Tate Affidavit, ¶ 3.) Specifically, the Plaintiff left the summons and Complaint at the Defendant's residence or usual place of abode with Penni Snyder and mailed a copy to the Defendant's last known address. The Defendant admits to having received the Complaint in November 2012. (Feintuch Decl., ¶ 14.) However, the Defendant explains that while he

3

intended to either contact a lawyer or else determine how he could represent himself, he inadvertently failed to take any action to respond to the Complaint on a timely basis due to issues involving the health of one of his daughter's and the recent death of his father. (Feintuch Decl., ¶ 14.)

In this regard, on April 11, 2009, the Defendant's wife, then age 50, gave birth to identical triplets. (Feintuch Decl., ¶ 8.) According to the Defendant, the pregnancy was unplanned. (Feintuch Decl., ¶ 8.) Two of the triplets returned home from the hospital several months after their birth. (Feintuch Decl., ¶ 8.) However, the third triplet, Evienne, suffered from Bronchopulmonary dysplasia and other life-threatening conditions, and thus, did not return home until more than three years later, on August 6, 2012. (Feintuch Decl., ¶¶ 8–10.) Since she was born, Evienne has required the Defendant's full attention and, as a result, the Defendant spent most of the last three years at the hospital and other medical facilities where Evienne was being treated. (Feintuch Decl., ¶ 9.)

Evienne is now approximately four-years old. (Feintuch Decl., ¶ 8.) Although she is home, Evienne breathes with a respirator, is unable to walk or eat on her own and requires constant care and attention. (Feintuch Decl. ¶ 10.) Furthermore, since returning home, Evienne was hospitalized three times for different medical issues and life-threatening emergencies. (Feintuch Dec., ¶ 11.) "These hospitalizations occurred in October, November and December of 2012." (Feintuch Decl., ¶ 11.) The Defendant also cares for his other two triplet daughters and his older daughter. (Feintuch Decl., ¶ 12.)

In addition, in August 2012, the Defendant's father died at the age of 96. (Feintuch Decl., ¶ 13.) The Defendant's father lived with the Defendant and his family. (Feintuch Decl., ¶

4

13.) According to the Defendant, he was very close to his father and so his passing was "a very traumatic event" for the Defendant and his family. (Feintuch Decl., ¶ 13.)

On December 14, 2012, the Plaintiff requested a Certificate of Default pursuant to Fed. R. Civ. P. 55(a). (Tate Affidavit, ¶ 7.) The Plaintiff's counsel asserted that the Defendant was not an infant, incompetent person or currently on active military duty of the armed force of the United State of America. (Tate Affidvait, ¶¶ 4–5.) According to the Plaintiff, as mentioned above, the Defendant was properly served on November 6, 2012, but failed to plead or otherwise defend against the Complaint. (Tate Affidavit, ¶¶ 3, 6.) On December 17, 2012, a Certificate of Default was entered by the Clerk of the Court.

On January 2, 2013, the Defendant moved to vacate the Clerk's December 17, 2012 Certificate of Default. The Defendant argues that (1) his default was not willful, due to the issues involving Evienne and his father; (2) the Plaintiff will not suffer any prejudice if the default is vacated, since the Complaint was filed recently; and (3) he has a meritorious defense to the Complaint, namely that he had obtained a forbearance on the notes at issue in May of 2012 from Sallie Mae, as discussed above. (Feintuch Decl., ¶¶ 8–25.) With his motion, the Defendant included a proposed Answer. The Plaintiff has not opposed the Defendant's motion.

## II. DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Once an entry of default has been made, the defendant may move to set aside the default entry pursuant to Fed. R. Civ. P. 55(c) for "good cause shown." Fed. R. Civ. P. 55(c). Where, as here, there has been a certificate of default by the Clerk of the Court, but no default judgment, the Court decides the motion to

5

vacate the entry of default pursuant to Rule 55(c), which is more lenient than the standard to set aside a default judgment under Rule 60(b).  See Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b).").

The question for the Court, then, is whether that Defendant's motion is supported by good cause, an inquiry that turns on the Court's analysis of three factors.  In determining whether good cause exists to set aside an entry of default, courts should consider:  (1) "the willfulness of the default"; (2) "the existence of a meritorious defense"; and (3) "the level of prejudice that the non-defaulting party may suffer should relief be granted."  Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 171 (2d Cir. 2001) (citations omitted).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).

"It is well established that default judgments are disfavored," and that "[a] clear preference exists for cases to be adjudicated on the merits."  Pecarsky, 249 F.3d at 171 (citations omitted).  Thus, "in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits."  New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (citing Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001)).

**A. Whether the Defendants Default was "Willful"**

The first factor courts typically consider when determining whether good cause exists to set aside an entry of default is willfulness.  A finding of willfulness is appropriate where "there is

evidence of bad faith" or the default arose from "egregious or deliberate conduct." Holland v. James, No. 05-CV-5346, 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 60–61 (2d Cir. 1996)). Courts should "resolve any doubt about [a defendant's] willfulness in his favor." Raheim v. New York City Health and Hosps. Corp., No. 96-CV-1045, 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007) (citing Enron, 10 F.3d at 98). In addition, the Court bears in mind that "[w]hile courts are entitled to enforce compliance with the time limits of the [Fed R. Civ. P.] by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." Meehan, 652 F.2d at 277; see also Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 319 (2d Cir. 1986) ("[D]istrict courts regularly exercise their discretion to deny technically valid motions for default.").

Here, the Court finds that the Defendant's default was not willful. The Defendant expresses that he intended to answer, but was understandably distracted by the serious medical issues involving his then three-year-old daughter Evienne, as well as the recent passing of his father. Thus, making all inferences in favor of the Defendant, the Court finds that, given these circumstances and the only two-week delay between the entry of default and the Defendant's motion to vacate, the default was not willful. Cyril v. Neighborhood P'ship II Housing Dev. Fund, Inc., 124 F. App'x 26, 27 (2d Cir. 2005) ("As to Neighborhood Partnership, the District Court did not abuse its discretion in finding that the default was not wi[l]lful, as demonstrated by counsel's diligence after a slight delay due to illness.") (summary order); Murray Engineering, P.C. v. Windermere Properties LLC, 2013 WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2013); (finding that where the son of the defendant's counsel was suffering from severe seizures and the failure to answer was not a deliberate strategic decision, the defendant's conduct, while

7

"undoubtedly negligent," did not rise to the level of willfulness) Wharton v. Nassau County, No. 10-CV-265, 2010 WL 4878998, at *2 (E.D.N.Y. Nov. 22, 2010) ("Even without considering whether service was proper or whether the parties' alleged stipulation was effective, the worst that can be said about [the] [d]efendants' behavior is that they missed a deadline and then, without prompting by [the] [p]laintiff, corrected their mistake by filing an Answer after a relatively short delay. Such conduct is arguably careless, but it does not rise to the level of willfulness required for a default judgment."); Aetna Life Ins. Co. v. Licht, No. 03-CV-6794, 2004 WL 2389824, at *4 (E.D.N.Y. Oct. 25, 2004) (finding that the defendants' default was not willful when the default was caused, in part, by illnesses afflicting both the defendants' attorney and his family).

**B. Whether the Defendant has Established a Meritorious Defense**

The second factor for the Court to consider is whether the Defendant has shown the existence of a meritorious defense. "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. A defense is meritorious if it is good at law so as to give the factfinder some determination to make." Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (quoting Anilina Fabrique de Colorants v. Aakash Chems. and Dyestuffs, Inc., 856 F.2d 873, 879 (7th Cir. 1988)). In order to proffer a "meritorious defense," a "defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." Enron, 10 F.3d at 98. For example, in the context of a motion to vacate a default, a defense that the parties were properly paid constitutes a "meritorious defense." See Franco v. Ideal Mortg. Bankers, Ltd., No. 07-CV-3956, 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010).

Here, the Defendant claims he has a meritorious defense because in May of 2012 he allegedly obtained a forbearance agreement for the three promissory notes at issue. This supposed forbearance agreement suspended the payments the Defendant had to make on the notes for "at least several months." (Feintuch Decl., ¶ 22.) Moreover, the Defendant provided specific details regarding this defense, such as explaining his reason for seeking the forbearance, describing his phone conversation with the Sallie Mae representative and providing a confirmation number for the alleged forbearance agreement he obtained through Sallie Mae's automated phone system. Assuming the Defendant's factual assertions are true, then the Defendant could not have defaulted on the notes because he was not obligated to make payments at the time they purportedly went in default. Accordingly, the Court finds the Defendant has stated a meritorious defense.

**C. Whether the Plaintiff will be Prejudiced by Vacating the Default**

The third factor for the Court's consideration is whether the party who has obtained the certificate of default would be prejudiced if the Court granted the motion to vacate. "In order to show the requisite level prejudice, the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." Murray Engineering, P.C., 2013 WL at *5. "Prejudice results when delay causes 'the loss of evidence, create increased difficulties of discovery or provide greater opportunity for fraud and collusion.'" Ward v. Ramkalawan, No. 11-CV-4295, 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013), adopted by 2013 WL 1149068, at *1 (E.D.N.Y. Mar. 19, 2013) (quoting Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)). Thus, "delay alone is not a sufficient basis for establishing prejudice." Id. (quoting Davis, 713 F.2d at 916).

Here, the Defendant "made the instant motion shortly after the default was entered," "discovery has not commenced" and "there is no suggestion that evidence has been lost or destroyed, witnesses have become unavailable or lost their memory regarding pertinent events, or opportunities for fraud has ensued." Id. Indeed, the Plaintiff has not explained how it will be prejudiced if the Certificate of Default is vacated, as the Plaintiff has not opposed the Defendant's motion. Therefore, the Court finds that the Plaintiff will not be prejudiced by vacating the Certificate of Default.

### III. CONCLUSION

The Court has found that the three factors courts should consider when determining whether good cause exists to set aside an entry of default – that is, (1) the lack of willfulness in the default; (2) the existence of a meritorious defense; and (3) the lack of prejudice that the non-defaulting party would suffer should relief be granted – all weigh in favor of granting the Defendant's motion to vacate the December 17, 2012 Certificate of Default. As such, it is hereby:

**ORDERED**, that the Defendant's motion to vacate the December 17, 2012 Certificate of Default pursuant to Federal Rule of Civil Procedure 55(c) is granted; and it is further

**ORDERED**, that the Defendant is directed to file his Proposed Answer as his Answer within 30 days of the date of this Order; and it is further

**ORDERED**, that the Clerk of the Court is directed to randomly assign a United States Magistrate Judge to this case from the Long Island referral wheel; and it is further

**ORDERED**, that the parties are directed to initiate communications with the assigned United States Magistrate Judge within thirty days of the date of this Order.

**SO ORDERED**.

Dated: Central Islip, New York
May 7, 2013

                                                                                             */s/ Arthur D. Spatt*
                                                                                               ARTHUR D. SPATT
                                                                                      United States District Judge